STATE *v.* CAHN *et al.*

(Division B. Dec. 17, 1934.)

[158 So. 202. No. 31348.]

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

Wilbourn, Miller & Wilbourn, of Meridian, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The grand jury of Lauderdale county returned a bill of indictment against E. Cahn, Sr., E. Cahn, Jr., and Mark Dabbs, Sr., in the following words: "That E. Cahn, Sr., E. Cahn, Jr., and Mark Dabbs, Sr., in said County

on the ———— day of ————, A. D. 1933, being then and there officers and agents of the Cahn Bank & Trust Company, a Mississippi Banking Corporation, doing a general banking business in the state of Mississippi, and domiciled in the City of Meridian, Mississippi, did unlawfully, wilfully, knowingly and feloniously subscribe to, make, and exhibit a false statement or report in writing, as to the condition of Cahn Bank & Trust Company, banking corporation aforesaid, and did then and there cause the same to be exhibited and published in the Meridian Star, a daily newspaper published in Meridian, Mississippi, in its issue of Friday, January 13, 1933, at page 3 thereof, and which said statement was signed, attested and sworn to by Mark E. Dabbs, cashier of said Bank, and E. Cahn and E. Cahn, Jr., directors of said bank before W. V. Evans, Notary Public on the 11th day of January, A. D., 1933, and which said statement, exhibit or report in writing, represented as resources of said bank the following, to-wit: Loans and discounts, three hundred seventeen thousand seven hundred seventeen dollars and twenty-nine cents; Stocks, bonds, securities, etc., one hundred fifty thousand eight hundred thirty-eight dollars and forty-five cents; Banking house and lot, forty thousand dollars; Other real estate owned, forty-one thousand seventy-one dollars and eighty-six cents; Furniture and fixtures, ten thousand dollars; all of which said representations as to the condition of the said Cahn Bank and Trust Company, as above stated, were then and there known to the said E. Cahn, Sr., Mark Dabbs, and E. Cahn, Jr., to be false, and unlawfully, wilfully, knowingly, feloniously subscribed to, made and exhibited with the unlawful, wilful and felonious intent then and there to deceive M. R. Adams and other persons unknown to the Grand Jury.''

This indictment was, by E. Cahn, Sr., and E. Cahn, Jr., demurred to on many grounds, a nol pros. having

been entered as to Mark Dabbs who had died prior to the filing of the demurrer. The court below sustained the demurrer, and, from the judgment so sustaining it, the state appeals.

The indictment was framed for the purpose of charging some offense under section 3832, Code of 1930 (chapter 207, Laws of 1916), reading as follows: "Any officer, director, cashier, agent, clerk or stockholder of any bank (other than national bank) doing business in the state of Mississippi, who shall wilfully and knowingly subscribe to or make any false report or any false statement or entry in the books of such bank, or who knowingly subscribes or exhibits any false writing or paper with the intent to deceive any person as to the condition of such bank, shall be punished by a fine of not exceeding one thousand dollars or by imprisonment in the penitentiary not more than three years. Any banker officer, employee, director or agent of any state bank who shall wilfully or knowingly neglect to perform any duty required by law, where no other penalty is provided or who shall fail to conform to any lawful requirement made by the banking department shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed five hundred dollars or by imprisonment in the county jail not to exceed six months, or by both such fine and imprisonment. And each officer, or employee of the banking department who shall neglect to perform any duty required by law, where no other penalty is prescribed, shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine not to exceed five hundred dollars or by imprisonment in the county jail not to exceed six months, or both such fine and imprisonment."

It will be noted that this statute covers varied and sundry acts. In the domain of criminal law, like charity in the domain of moral law, the statute covers a multitude of sins.

The indictment gives the date of a certain publication by the defendants in newspaper, but does not give the date on which the condition described in the publication existed. The indictment also, in very general language, charges that the statement exhibited, or reported in writing, represented the resources of the bank in various sums, or in various kinds of property and securities, and then used general language viz. "all of which representations as to the condition of the said Cahn Bank and Trust Company, as above stated, were then and there known to the said E. Cahn, Sr., Mark Dabbs, and E. Cahn, Jr. to be false." Surely such a general statement made up of various items cannot be alleged to be false without descending to some particular items therein which were known to be false.

The rule in reference to indictments has been well and clearly stated in numerous cases in this state. In State v. So. Ry. Co., 112 Miss. 23, 72 So. 837, 838, the court said that: "Where, therefore, the language of the statute is broader than its purpose, and the indictment is in the words of the statute, it cannot be told whether the jury intended to find the defendant guilty of the act forbidden by the statute, or of those only, within its literal but not its true construction. It is therefore necessary for the pleader to depart from the statute and indict in words aptly charging an offense, in all cases in which the words of the statute do not by legal intendment import a particular offense certainly committed by one who has violated its literal language"—citing Sullivan v. State, 67 Miss. 346, 7 So. 275; Jesse v. State, 28 Miss. 100; Harrington v. State, 54 Miss. 490; Rawls v. State, 70 Miss. 739, 12 So. 584; State v. Bardwell, 72 Miss. 535, 18 So. 377; and Richburger v. State, 90 Miss. 806, 44 So. 772. In the same opinion, the court also said: " 'Where the language of the statute is so specific as to give notice of the act made unlawful, and so exclusive as to prevent

its application to any other acts than those made unlawful,' it is sufficient 'to charge the offense by using only the words of the statute.' 'But where the act prohibited does not clearly appear from the language employed, or where, under certain circumstances, one may lawfully do the thing forbidden by the literal meaning of the words of the statute, it is not sufficient to indict by the use only of the statutory words; under such circumstances, the indictment must charge in apt language the unlawful act, that the defendant may be advised of the nature and character of the offense with which he is charged, and that he may by demurrer take the opinion of the court whether the facts charged constituted an offense.' ''

In State v. Bardwell, 72 Miss. 535, 18 So. 377, 378, the indictment undertook to charge the receipt by an officer of a certain bank deposit when such officer knew, or had reason to believe, that the bank was insolvent, and it was held that the indictment was fatally defective in failing to aver the essential fact. In the course of the opinion the court said: ''The district attorney, in preparing the indictment, has followed the precise language of the statute. What is charged may be true, and yet the defendant may not be guilty of the offense contemplated. The condition of the bank when the deposit was received may have been such that defendant had good reason to believe it to be insolvent, and yet in fact it may not have been. It is the receipt of the deposit into an actually insolvent establishment by an officer or agent knowing, or having good reason to believe, that fact of such real insolvency, that is made criminal by the law, and this essential fact should be averred in indictments under the statute.''

In Roberts v. State, 72 Miss. 110, 16 So. 233, 234, an indictment was issued against the appellant for forgery under section 1358, Ann. Code 1892, which the

court held to be insufficient for an inadequate description, saying that: "It cannot be contended that the statute was designed to dispense with all particularity of averment of pleading in criminal cases, and make the averment of the usual name of an instrument sufficient notice of the nature and cause of the accusation preferred. The citizen, when charged with crime, is entitled to be informed as to acts which he has committed which constitute his supposed crime. We are not to give our statute such interpretation as will rob the accused of the substantial safeguards which, in every age of the law, he has enjoyed, when called to answer for high crimes. He was not to be deprived of his right to be told what his supposed offense is, as well as to know its mere name. The mere shadow of naming the crime cannot be substituted for the substance of distinctly apprising him of the particulars of his supposed offense. It cannot have been the legislative purpose to override and strike down the right of every one to know at least substantially, wherein he is charged as an offender. If the statute were to be interpreted as abridging the cherished right of every man to know the cause, as well as the nature, of the crime charged, it would be declared unconstitutional. The learned counsel for the state nowhere advances the view we are combating. His contention is that the averments of the indictment as to the deed alleged to have been forged are sufficient to give the accused fair notice of the cause of the crime charged against him." Further on in the opinion the court also said that: "Under our liberal system of pleading, the effete formulas of legal formalism are torn away from judicial administration in order that the very right in every case may prevail, and that substantial justice may be done; but it was never contemplated that essential safeguards of personal liberty should be trampled under foot, also."

The indictment in the case at bar charged that the statement was made with an unlawful intent to deceive M. R. Adams. It does not allege that this statement was exhibited to Adams, and, if so, when or under what circumstances, and does not allege that he, or any other person, was deceived thereby. As stated, the indictment should have descended to particulars, so that a person charged with this serious crime could know the nature and cause of the charge. He certainly should not be required to run the gauntlet of proof as to any item used in the statement.

It would, of course, be impossible to draft a statute in such specific language as would reach every particular action that might be done by those in charge of financial institutions to deceive or defraud the public. The statute quoted covers many different kinds of acts, and an indictment framed thereunder should select the particular act and give specific information, so as to apprise the accused of the nature of his crime, and thus enable him, after standing trial once, to plead the result of such trial in bar of any further prosecution and also enable him to prepare his defense to the charge.

The judgment of the court below sustaining the demurrer was correct and is affirmed.

Affirmed.